## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:21-CV-00449-RGJ-CHL

**REBECCA W.,**[1]  **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**  **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff, Rebecca W. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 13.) Claimant and the Commissioner each filed a Fact and Law Summary. (DNs 18, 19, 23.) Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

## I. BACKGROUND

On or about July 2, 2019, Claimant protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on June 1, 2018. (R. at 17, 146, 161, 176, 178, 180, 196, 212, 214, 315-26.) On August 26, 2020, Administrative Law Judge ("ALJ") Aubri Masterson ("the ALJ") conducted a hearing on Claimant's application. (*Id.* at 56-83.) In a decision dated November 2, 2020, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 14-55.) In doing so, the ALJ made the following findings:

---

[1] Pursuant to General Order 22-05, the Plaintiff in this case is identified and referenced solely by first name and last initial.

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2023. (*Id.* at 19.)

2. The claimant has not engaged in substantial gainful activity since June 1, 2018, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: Degenerative Changes of the Lumbar Spine; Diabetes Mellitus; Diabetic Polyneuropathy; Mild Osteoarthritis of the Left Hip; Osteoarthritis of the Bilateral Knees; Fibromyalgia; Mild Osteoarthritis of the Left Shoulder; Obesity; Hypertension; Migraine Headaches; Obstructive Sleep Apnea; Depression; and Anxiety. (*Id.* at 20.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 21.)

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except: the claimant is able to perform frequent handling, fingering and feeling with the bilateral upper extremities; the claimant is able to perform no reaching overhead with the nondominant left upper extremity; the claimant is able to perform frequent use of hand and foot controls bilaterally; the claimant is able to perform occasional stooping and climbing of ramps and stairs but no crouching, kneeling, crawling or climbing of ladders, ropes or scaffolds and no balancing on narrow, slippery, wet or erratically moving surfaces or on uneven terrain; the claimant is able to have occasional exposure to fumes, odors, dusts, gases and poor ventilation but no exposure to vibrations or hazards, including unprotected heights and dangerous machinery; and the claimant is able to perform simple routine work, maintain concentration for two-hour segments, have frequent interaction with supervisors and co-workers and occasional interaction with the general public and adapt to routine work changes. (*Id.* at 24-25.)

6. The claimant is unable to perform any past relevant work. (*Id.* at 47.)

7. The claimant . . . was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (*Id.*)

8. The claimant has at least a high school education. (*Id.* at 48.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2018, through the date of this decision. (*Id.* at 49.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on April 9, 2021. (*Id.* at 6-11, 312-14, 481-83.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2021); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Claimant requested an extension of time to file a civil action from the Appeals Council. (R. at 4-5.) The Appeals Council granted her request on June 29, 2021, giving Claimant thirty days from receipt of the letter granting her request to file her civil action. (*Id.* at 1-3.) The Appeals Council's letter stated that it would assume that Claimant received the letter five days thereafter unless Claimant presented some evidence that she did not receive it within that period. (*Id.* at 1.) Accordingly, Claimant timely filed this action on July 9, 2021. (DN 1.).

## II. DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 404-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2021).

### A.  Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.  Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2021). In summary, the evaluation process proceeds as follows:

(1)  Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)  Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2021).

>
> significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.
>
> (3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.
>
> (4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> (5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Claimant's Contentions

Claimant argued that the ALJ erred in several ways. She argued that the ALJ erred in determining whether her fibromyalgia met the requirements of the Listings in accordance with SSR 12-2p. (DN 19, at PageID # 1298-1300.) She argued that the ALJ erred in his RFC determination in his assessment of her ability to stand, walk, and squat by failing to reconcile an inconsistency between several opinions that the ALJ found persuasive. (*Id.* at 1292-97.) She also argued that this error in the ALJ's RFC determination caused the hypothetical that the ALJ presented to the vocational examiner ("VE") to be insufficient because it "failed to account for all

5

of the [Claimant]'s limitations"; thus, she claimed the ALJ's step five findings were deficient and unsupported by substantial evidence. (*Id.* at 1294.) The undersigned will consider each of these arguments below.

The undersigned finds that the Claimant has waived any argument regarding the ALJ's RFC with respect to her ability to sit. Though the Claimant's brief referred in headings and introductions to errors in the ALJ's evaluation of her "sitting and standing limitations," the substantive arguments she raised related solely to her ability to stand, walk, and squat. (*Compare* DN 18, at PageID # 1280 *and* DN 19, at PageID # 1285, 1290, 1292 (referencing "sitting and standing limitations"), *with* DN 19, at PageID # 1292-97 (raising substantive arguments related only to standing, walking, and squatting).) Her perfunctory references to the ALJ's analysis regarding her ability to sit are not a cogent and coherent argument supported by citations to the record and relevant authority. Thus, the undersigned concludes the same is waived. *See United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997)); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006).

        1.    **Listings**

Claimant argued that the ALJ erred at step three in determining that her fibromyalgia did not meet the requirements of the Listings and in his application of SSR 12-2p. (DN 19, at PageID # 1298-1300.) At step three of the five-step evaluation process, the ALJ considers whether the claimant has an impairment that satisfies the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, which are generally referred to as the "Listings." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "[A] claimant who meets the requirements of a listed impairment will be

deemed conclusively disabled." *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 653 (6th Cir. 2009). A claimant's impairment satisfies a Listing only when the claimant manifests the specific requirements described in the Listing's medical criteria. 20 C.F.R. §§ 404.1525(d), 416.925(d) (2021). To meet the requirements of a listed impairment or its equivalent, a claimant must demonstrate specific findings that duplicate the enumerated criteria of the listed impairment. *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006); *see also Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency."). The claimant bears the burden of proving his or her impairment satisfies all the specified criteria in a given Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Here, at step two, the ALJ found that Claimant's fibromyalgia was a severe impairment. (R. at 20.) However, at step three, the ALJ found that Claimant's impairments, either singly or in combination, did not meet or medically equal the severity of any impairment in the Listings. (*Id.* at 21.) The ALJ included a specific discussion of why Claimant did not meet a number of the Listings including sections 1.04, 9.00B(5), 11.04, 1.02, 4.00H1, 11.02B, 11.02D, 3.00P, 12.04, and 12.06. (*Id.* at 21-24.) The ALJ also noted that he specifically considered the requirements of SSR 12-2p regarding fibromyalgia, SSR 19-2p regarding obesity, and SSR 19-4p regarding headache disorders. (*Id.* at 21-22.) With respect to fibromyalgia, SSR 12-2p provides regarding step three that

> [fibromyalgia ("FM")] cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or

7

> whether it medically equals a listing in combination with at least one other medically determinable impairment.

SSR 12-2p, 77 Fed. Reg. 43640, 43644 (July 25, 2012). Claimant argued that the ALJ erred by not specifically considering whether she met Listing 14.09D and that consideration of that Listing was required by SSR 12-2p. (DN 19, at PageID # 1298.) Her argument is meritless based on the plain language of the SSR above, which requires the ALJ to determine whether a claimant's fibromyalgia meets or medically equals a Listing for any impairment and supplies 14.09D as a *potential* example. To the extent that Claimant intended to argue that the ALJ should have considered and discussed Listing 14.09D or any other particular Listing in his determination, she failed to offer sufficient evidence to support her claim. Given that there are so many potential Listings, the regulations do not require an ALJ to address every Listing in his or her findings. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). If "the record 'raises a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). A "substantial question" requires the claimant to "point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 579 F. App'x at 432. Without such evidence, the ALJ "does not commit reversible error by failing to evaluate a listing at Step Three." *Id*. at 433. Claimant incorrectly argued that she did "not need to demonstrate which Listing would have been met" and that "[i]t is up to the ALJ, not the [claimant], and not this Court, to perform the complete analysis." (DN 19, at PageID # 1300.) The law cited above requires that, to support her argument that the ALJ erred in failing to discuss a particular Listing, the claimant supply the numbered Listing and cite to evidence that she could meet or equal all of the Listing's requirements. She did not do so in her brief. Accordingly, she has not

8

demonstrated any error in the ALJ's failure to discuss Listing 14.09D or any other Listing not already addressed in his decision.

Claimant also argued generally that the ALJ did not comply with SSR 12-2p. In his step three analysis, the ALJ cited SSR 12-2p and stated that fourteen of the eighteen trigger points needed to establish fibromyalgia were found during a consultative examination but emphasized that even during that evaluation Claimant had "full ranges of motion and normal strength." (*Id.* at 21 (citing *id.* at 1087-94).) The ALJ also emphasized that "there [wa]s a conspicuous absence of any medically documented findings of trigger points or other objective indicia of fibromyalgia or its effects on other body system functioning from any other examining or treating source upon which to support a finding of impairment of Listings level severity." (*Id.* at 21.) The ALJ then cited to a number of medical records in support of this conclusion. (*Id.*) Claimant argued that it was improper for the ALJ to cite to numerous records "in blanket and string-cite form" without explaining upon what in those records he was relying. (DN 19, at PageID # 1300.) But Claimant provided no discussion of or examination of the records cited by the ALJ to call into question the validity of his analysis. He explained in his decision that those records showed the absence of trigger point findings or objective indicia or fibromyalgia. As Claimant provided no specific examples of ways in which that was an inaccurate generalization and no authority compelling a more specific conclusion or discussion by the ALJ, the undersigned has no responsibility to make Claimant's argument for her. Thus, the undersigned finds no error in the ALJ's citation to medical records in support of his generalization regarding the content of the records.

As to Claimant's argument that the ALJ failed to comply with SSR 12-2p, the undersigned finds that the ALJ's reference to the SSR and analysis regarding a number of specific Listings constitute sufficient discussion both for purposes of compliance with the SSR and to allow the

9

Court to trace the path of the ALJ's reasoning. Claimant relies heavily on *Kado v. Colvin*, No. 1:15-cv-02044-DAP, 2016 WL 6067779, at *1 (N.D. Ohio October 17, 2016), to support her argument that the ALJ's analysis here was insufficient. But *Kado* is factually distinguishable from the instant case. The entirety of the ALJ's finding regarding fibromyalgia and SSR 12-2p in *Kado* was, "While Social Security Ruling 12–2p addresses the method for evaluating fibromyalgia, the undersigned notes that no listing of impairment directly pertains to fibromyalgia. Accordingly, the undersigned finds that the severity of the claimant's fibromyalgia fails to meet any listing of impairment because no such listing exists." *Id.* at *8. This finding is vastly different from the specific finding in the instant case that references the medical evidence of record and is surrounded by consideration of a number of specific Listings. Thus, the undersigned finds *Kado* nondispositive of the instant case.

As to Claimant's more general challenge to the sufficiency of the ALJ's Listing analysis, the undersigned finds the same to be without merit. The regulations do not specify how much discussion an ALJ must provide regarding those Listings as to which a substantial question is raised. However, the Sixth Circuit has held that in evaluating whether a claimant has met a particular Listing, an ALJ must "actually evaluate the evidence, compare it to . . . the [relevant] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). This is not a heightened articulation standard because as the Sixth Circuit has also acknowledged the applicable regulations only require the ALJ to *consider* whether the Listings are applicable; they do not require the ALJ to provide "good reasons" as in the context of the former treating physician rule. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(3), (a)(4)(iii) and *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), *as amended*);

10

*Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). Nor do the applicable regulations regarding the Listings require an ALJ to explain how he or she considered particular factors as they do in the context of the new rules applicable to opinion evidence. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2021) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."). While some unpublished Sixth Circuit cases have found that a court may properly look to the ALJ's analysis elsewhere in the decision to assess what the ALJ considered at step three, others discourage speculating as to the ALJ's analysis. *Compare Bledsoe*, 165 F. App'x at 411 ("The mere failure to discuss every single impairment under the step three analysis is not a procedural error."), *and Forrest*, 591 F. App'x at 366 ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three."), *and Smith-Johnson*, 579 F. App'x at 435 ("It also is proper to consider the ALJ's evaluation . . . at other steps of his decision . . . ."), *with Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *6 (6th Cir. Mar. 6, 2017) (noting that while the district court looked elsewhere in the ALJ's opinion to see what medical evidence the ALJ had cited, "[t]he district court should not have speculated what the ALJ may have concluded had he considered the medical evidence under the criteria in Listing 1.02"). Regardless of where a court looks to determine upon what evidence the ALJ relied, if the claimant presents a substantial question as to whether he or she meets the required criteria of a particular Listing, the ALJ's failure to do necessary analysis cannot be deemed harmless error. *Smith-Johnson*, 579 F. App'x at 433 n.5; *Pasiak v. Comm'r of Soc. Sec.*, 800 F. App'x 301, 304 (6th Cir. 2019). The error is not harmless because "the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits." *Reynolds*, 424 F. App'x at 416. Here, as noted above,

11

Claimant has not presented a substantial question as to whether she met or medically equaled the criteria of any particular Listing. Accordingly, the Court finds no error in level of analysis performed by the ALJ.

Having found all Claimant's allegations of error regarding the ALJ's Listing analysis to be without merit, the undersigned finds that the ALJ's step three determination in this case was supported by substantial evidence.

    **2.    RFC**

Claimant argued that the ALJ erred in his RFC assessment of her ability to stand, walk, and squat. (DN 19, at PageID # 1292-97.) An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c) (2021). The ALJ bases his or her determination on all relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1)-(4), 416.945(a)(1)-(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 416.920c; 20 C.F.R. §§ 404.1529, 416.929 (2021).

Claimant argued that the ALJ erred in failing to reconcile distinctions between and fully credit the opinion evidence he found persuasive. (DN 19, at PageID # 1292-97.) Specifically, Claimant criticizes the ALJ's analysis of the opinions of state agency physicians Robert Culbertson, M.D., ("Dr. Culbertson") and Jack Reed, M.D., ("Dr. Reed") and consultative examiner ("CE") Dr. Curtis Gale-Dyer, D.O., ("Dr. Gale-Dyer"). (*Id.*) The new regulations for evaluating medical opinions are applicable to Claimant's case because she filed her application after March 27, 2017. Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[3] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2). An ALJ is not required to explicitly discuss how he or she weighed the other regulatory factors of relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2).

Claimant did not make a procedural argument regarding the ALJ's compliance with the above regulations. Instead, she only argued that the ALJ erred by finding the opinions of Drs. Culbertson, Reed, and Gale-Dyer all "generally persuasive" without resolving what she perceived to be inconsistencies between those opinions with respect to her ability to stand, walk, and squat. (DN 19, at PageID # 1292-97.) In his October 1, 2019, evaluation, CE Dr. Gale-Dyer opined that Claimant "may have difficulty with any type of kneeling, squatting or crawling or prolonged walking or standing due to her knee." (R. at 1091.) In his October 11, 2019, evaluation, Dr. Culbertson found that Claimant could stand and walk for six hours out of an eight-hour workday and could frequently crouch. (*Id.* at 154-55, 169.) Dr. Reed likewise found in his January 17, 2020, evaluation that Claimant could stand and walk for six hours out of an eight-hour workday and could frequently crouch. (*Id.* at 189, 205.)

---

[3] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2021).

Claimant argued that standing and walking for six hours out of an eight hour workday is "prolonged" standing and walking of the type Dr. Gale-Dyer found she could not perform. (DN 19, at PageID # 1296-97.) But she provided no authority to support her position, nor is it clear that her proposition is supportable. Drs. Culbertson and Reed indicated in their opinions that they had the opportunity to review Dr. Gale-Dyer's evaluation and that they found the same persuasive; accordingly, it appears they viewed their opined limitations as consistent with those stated by Dr. Gale-Dyer. (R. at 155-56, 170-71, 190-91, 206-07.) Dr. Gale-Dyer was not more specific in her opinion as to the meaning of "prolonged." Ultimately, the ALJ found that Claimant had the RFC to perform light work, which involves "a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b), 416.967(b) (2021). SSR 83-10 elaborates on the regulation's definition of the standing and walking requirements for light work and provides, "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983.) Thus, even the full range of light work does not necessarily require six straight hours of standing or walking as Claimant implies. Given this and the fact that Dr. Gale-Dyer's opinion did not specify Claimant's limitation in functional terms, the undersigned finds no inconsistency between the opinions of Drs. Culbertson, Reed, and Dr. Gale-Dyer as to Claimant's capability to walk and stand that the ALJ failed to reconcile. Therefore, the undersigned finds that the ALJ's RFC finding regarding Claimant's ability to stand and walk was consistent with the opinions of Drs. Culbertson, Reed, and Dr. Gale-Dyer.

Claimant also argued that Dr. Gale-Dyer's opinion that she may have difficulty with squatting was inconsistent with Dr. Culbertson and Dr. Reed's opinions. (DN 19, at PageID # 1295.) Drs. Culbertson and Reed referred to Claimant's ability to crouch in their opinions, which

is defined as "bending the body downward and forward by bending both the legs and spine." SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). Courts typically view crouching and squatting as synonymous. *See, e.g.*, *Doornbos v. Comm'r of Soc. Sec.*, No. 17-1464, 2017 WL 8948744, at *4 (6th Cir. Dec. 13, 2017); *Kerns v. Comm'r of Soc. Sec.*, No. 2:16-CV-57, 2017 WL 1324609, at *4 (S.D. Ohio Apr. 11, 2017); *Eagal v. Comm'r of Soc. Sec.*, No. CV 17-13389, 2018 WL 7254611, at *6 n.2 (E.D. Mich. Oct. 31, 2018), *report and recommendation adopted*, No. 17-CV-13389, 2019 WL 125995 (E.D. Mich. Jan. 8, 2019). Drs. Culbertson and Reed found that Claimant could frequently crouch. (R. at 155, 169, 189, 205.) Frequently is defined as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6. Again, given the lack of specificity in Dr. Gale-Dyer's opinion and Drs. Reed and Culbertson's view of the same as persuasive, here again the undersigned cannot find that there is any inconsistency the ALJ failed to resolve with respect to Claimant's ability to squat. Even if there was an inconsistency, specifically with respect to Claimant's ability to crouch, the undersigned finds that Claimant has not demonstrated how any error affected the ALJ's decision. The ALJ found in his RFC determination that Claimant could perform "no crouching," which appears to moot any alleged inconsistency that the ALJ should have resolved. As the ALJ ultimately adopted greater limitations than those proposed by Drs. Culbertson, Reed, and Gale-Dyer, the undersigned concludes that any potential error regarding the ALJ's treatment of the opinion evidence as to Claimant's ability to crouch/squat was harmless.

As these are the only arguments raised by Claimant regarding the ALJ's RFC determination, the undersigned finds that the same is supported by substantial evidence.

### 3. Step Five

Claimant argued that the ALJ's failure to include greater limitations on her ability to stand, walk, and squat in the hypotheticals he posed to the VE invalidated the ALJ's step five finding.

(DN 19, at PageID # 1294.) At step five, the ALJ has the burden of demonstrating that there exists a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. §§ 404.1560(c) 416.960(c) (2021); *Jordan*, 548 F.3d at 423. The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations. *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). But a VE's testimony can constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the economy, *Bradford v. Sec'y Dep't. of Health & Hum. Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), only so long as the VE's testimony is based on a hypothetical question that "accurately portrays [a claimant's] individual physical and mental impairments." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). *See also Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 150 (6th Cir. 1996). "However, the ALJ is only required to incorporate into the hypothetical questions those limitations which have been accepted as credible." *Hare v. Comm'r of Soc. Sec.*, 37 F. App'x 773, 776 (6th Cir. 2002); *see also Stanley v. Sec'y of Health & Hum. Servs.,* 39 F.3d 115, 118-19 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.")). The undersigned has already found above the that ALJ's determination of Claimant's RFC, including his treatment of her ability to stand, walk, and squat, was supported by substantial evidence. Thus, the ALJ was not required to include additional limitations related to

these capacities in his hypothetical to the VE, and the VE's testimony constitutes substantial evidence to support his step five determination.

Accordingly, the undersigned finds that Claimant has failed to demonstrate any reversible error in the ALJ's step five analysis.

## III.     RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:     Counsel of Record
August 10, 2022

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all Parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).